**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

DISTRICT OF DELAWARE

Case number *(if known)* _____ Chapter 15

☐ Check if this an amended filing

## Official Form 401
# Chapter 15 Petition for Recognition of a Foreign Proceeding

12/15

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

| | | |
|---|---|---|
| 1. | **Debtor's name** | Chesswood Capital Management Inc. |

| | |
|---|---|
| 2. | **Debtor's unique identifier** |

    **For non-individual debtors:**

    ☐ Federal Employer Identification Number ____

    ☒ Other  1000054785. Describe identifier Canadian Federal Business Number

    **For individual debtors:**

    ☐ Social Security Number: ____

    ☐ Individual Taxpayer Identification Number (ITIN): ____

    ☐ Other ____. Describe identifier ____.

| | | |
|---|---|---|
| 3. | **Name of foreign representative(s)** | FTI Consulting Canada Inc. |

| | | |
|---|---|---|
| 4. | **Foreign proceeding in which appointment of the foreign representative(s) occurred** | In The Matter of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, C. C-36, as Amended and in the Matter of a Plan of Compromise or Arrangement of Chesswood Group Limited, Case Funding Inc., Chesswood Holdings Ltd., Pawnee Leasing Corporation, Chesswood US Acquisitionco Ltd., Lease-Win Limited, Windset Capital Corporation, Tandem Finance, Inc., Chesswood Capital Management Inc., Chesswood Capital Management USA Inc., Rifco National Auto Finance Corporation, Rifco Inc., Waypoint Investment Partners Inc. and 1000390232 Ontario Inc. |

| | |
|---|---|
| 5. | **Nature of the foreign proceeding** |

    *Check one:*

    ☐ Foreign main proceeding

    ☐ Foreign nonmain proceeding

    ☒ Foreign main proceeding, or in the alternative foreign nonmain proceeding

| | |
|---|---|
| 6. | **Evidence of the foreign proceeding** |

    ☐ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

    ☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

    ☒ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

    Due to the timing of the first day hearing, the Debtors have provided a copy of the initial order as entered by the Canadian Court with the Petitions and will file a certified copy upon receipt.

| | |
|---|---|
| 7. | **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?** |

    ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending).

    ☒ Yes

**8. Others entitled to notice**  Attach a list containing the names and addresses of:

(i)    all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)   all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9. Addresses**

**Country where the debtor has the center of its main interests:**

Canada

**Debtor's registered office:**

66 Wellington Street West, Suite Td Bank Tower, 5300, Toronto, Ontario, M5K 1E6, Canada
<span style="font-size:small">P.O. Box, Number, Street, City, State/Province/Region & ZIP/Postal Code</span>

Canada
<span style="font-size:small">Country</span>

**Individual debtor's habitual residence:**

<span style="font-size:small">P.O. Box, Number, Street, City, State/Province/Region & ZIP/Postal Code</span>

<span style="font-size:small">Country</span>

**Address of foreign representative(s):**

Toronto-Dominion Centre, TD South Tower, 79 Wellington St W Suite 2010, Toronto, ON M5K 1G8
<span style="font-size:small">P.O. Box, Number, Street, City, State/Province/Region & ZIP/Postal Code</span>

Canada
<span style="font-size:small">Country</span>

---

**10. Debtor's website** (URL)    https://www.chesswoodgroup.com/

---

**11. Type of debtor**

*Check one:*

☒ Non-individual (*check one*):

　☒ Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

　☐ Partnership

　☐ Other.
Specify: _____

☐ Individual

| 12. **Why is the venue proper in *this district*?** | *Check one:* |
|---|---|

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district.

_____

☒ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

<u>The Debtor is an affiliate of Chesswood US Acquisitionco Ltd., which is incorporated in Delaware. The Debtors respectfully submit that the administration of the Debtors' estates will be most efficiently administered by the Delaware Court rather than through multiple proceedings in different venues governing the disposition of the Debtors' assets.</u>

---

**13. Signature of foreign representative(s)**

I request relief in accordance with the chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is trued and correct.

I declare under penalty of perjury that the foregoing is true and correct,

X /s/ Jeffrey Rosenberg
Signature of foreign representative

Jeffrey Rosenberg
Printed name

Executed on    10/30/2024
MM / DD / YYYY

X
Signature of foreign representative

Printed name

Executed on
MM / DD / YYYY

---

**14. Signature of attorney**

X /s/ Kenneth J. Enos
Signature of Attorney for foreign representative

Date    10/30/2024
MM / DD / YYYY

Kenneth J. Enos
Printed name

Young Conaway Stargatt & Taylor, LLP
Firm name

1000 N. King Street
Wilmington, DE 19801
Number, Street, City, State & ZIP Code

302-571-6600
Contact phone

kenos@ycst.com
Email address

4544 DE
Bar number and State

# Item 6

# Decision Commencing Foreign Proceeding and Appointing the Foreign Representative

Court File No.:  CV-24-00730212-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE | ) | TUESDAY, THE 29TH |
| | ) | |
| JUSTICE KIMMEL | ) | DAY OF OCTOBER, 2024 |

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
**CHESSWOOD GROUP LIMITED, CASE FUNDING INC., CHESSWOOD HOLDINGS
LTD., CHESSWOOD US ACQUISITIONCO LTD., PAWNEE LEASING
CORPORATION,  LEASE-WIN LIMITED, WINDSET CAPITAL CORPORATION,
TANDEM FINANCE, INC., CHESSWOOD CAPITAL MANAGEMENT INC.,
CHESSWOOD CAPITAL MANAGEMENT USA INC., RIFCO NATIONAL AUTO
FINANCE CORPORATION, RIFCO INC., WAYPOINT INVESTMENT PARTNERS
INC. and 1000390232 ONTARIO INC.**

**INITIAL ORDER**

**THIS APPLICATION**, made by Royal Bank of Canada, in capacity as administrative
and collateral agent (the "**Pre-Filing Agen**t" or the "**Applicant**") to the lenders (the "**Pre-Filing
Lenders**") under a second amended and restated credit agreement dated as of January 14, 2022,  as
amended, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as
amended (the "**CCAA**") was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of Wenwei (Wendy) Chen sworn October 28, 2024 and the
Exhibits thereto (the "**Chen Affidavit**") and the pre-filing report of FTI Consulting Canada Inc.
("**FTI**"), in its capacity as proposed monitor of the CCAA Parties, dated October 29, 2024, and
on on hearing the submissions of counsel for the Pre-Filing Agent, counsel to FTI, and such
other counsel present, and on reading the consent of FTI to act as the monitor (in such capacity,
the "**Monitor**") and upon being advised that the CCAA Parties do not oppose the relief sought,

**SERVICE**

1.      **THIS COURT ORDERS** that the time for service of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

**DEFINITIONS**

2.      **THIS COURT ORDERS** that unless otherwise indicated or defined herein, capitalized terms have the meanings given to them in the Chen Affidavit.

**APPLICATION**

3.      **THIS COURT ORDERS AND DECLARES** that the CCAA Parties are companies to which the CCAA applies.

**POSSESSION OF PROPERTY AND OPERATIONS**

4.      **THIS COURT ORDERS** that, subject to the rights and powers granted in favour of the Monitor under this Order, the CCAA Parties shall remain in possession and control of their respective current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"). Subject to further Order of this Court, the CCAA Parties shall continue to carry on business in a manner consistent with the preservation of their business (the "**Business**") and Property.  The CCAA Parties shall each be authorized and empowered, subject to the consent of the Monitor and the terms of the DIP Term Sheet (as defined below), to continue to retain and employ the employees, independent contractors, advisors, consultants, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

5.      **THIS COURT ORDERS** that the CCAA Parties shall be entitled to continue to utilize the central cash management system currently in place as described in the Chen Affidavit or replace it with another substantially similar central cash management system with the consent of the Monitor (in either case, the "**Cash Management System**"), and that any present or future

- 3 -

bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the CCAA Parties of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as defined below) other than the CCAA Parties, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6.    **THIS COURT ORDERS** that the CCAA Parties shall, with the consent of the Monitor, be entitled but not required to pay the following expenses whether incurred prior to, on, or after the date of this Order, to the extent that such expenses are incurred and payable by the CCAA Parties and subject to the terms of the DIP Term Sheet:

(a)    all outstanding and future wages, salaries, employee benefits (including, without limitation, employee medical, dental, registered retirement savings plan contributions and similar benefit plans or arrangements), vacation pay and expenses, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements, and other payroll and benefits processing and servicing expenses;

(b)    the fees and disbursements of any Assistants retained or employed by the CCAA Parties or the Pre-Filing Agent, Pre-Filing Lenders, DIP Agent or DIP Lenders (as defined in the DIP financing principal terms sheet dated October 29, 2024, the "**DIP Term Sheet**") in respect of these proceedings, at their standard rates and charges; and

(c)    amounts owing for goods or services supplied to the CCAA Parties prior to the date of this Order by third party suppliers or service providers not exceeding US$1,000,000 in aggregate, if in the opinion of the Monitor such supplier or service provider is critical to the Business and ongoing operations of the CCAA Parties and the Property.

- 4 -

7.     **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein,  and subject to the terms of the DIP Term Sheet, the CCAA Parties shall, with the consent of the Monitor, be entitled but not required to pay all reasonable expenses incurred by the CCAA Parties in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order or any other Order of the Court, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services; and

(b)     payment for goods or services actually supplied to the CCAA Parties following the date of this Order.

8.     **THIS COURT ORDERS** that the CCAA Parties are authorized to remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes;

(b)     all goods and services taxes, harmonized sales taxes and other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the CCAA Parties in connection with the sale of goods and services by the CCAA Parties, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order, and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business, workers' compensation or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in

priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the CCAA Parties.

9.     **THIS COURT ORDERS** that until a real property lease, including a sublease and related documentation, to which any CCAA Party is a party (each a "**Lease**"), is disclaimed in accordance with the CCAA or otherwise consensually terminated, the applicable CCAA Party shall pay, with the consent of the Monitor, without duplication, all amounts constituting rent or payable as rent under such Lease (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the applicable landlord (the "**Landlord**") under such Lease, but for greater certainty, excluding accelerated rent or penalties, fees or other charges arising as a result of the insolvency of the CCAA Parties or the making of this Order) or as otherwise may be negotiated between the applicable CCAA Party and the Landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order, twice-monthly in equal payments on the first and fifteenth day of each month, in advance (but not in arrears).  On the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

10.     **THIS COURT ORDERS** that, except as specifically permitted herein, the CCAA Parties and the Monitor, for and on the behalf of the CCAA Parties, are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by any of the CCAA Parties to any of their creditors as of this date, except to the Pre-Filing Agent and Pre-Filing Lenders as provided for in this Order or the DIP Term Sheet or any Definitive Documents (each as defined below); (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of the Property; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business or pursuant to this Order or any other Order of the Court.

**RESTRUCTURING**

11.     **THIS COURT ORDERS** that the Monitor, in consultation with the DIP Agent shall, subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents (as defined below), have the right, for and on behalf of and in the name of the CCAA Parties, to:

(a)     permanently or temporarily cease, downsize or shut down any of the CCAA Parties' business or operations, and to dispose of redundant or non-material assets not exceeding US$1,000,000 in any one transaction or US$2,000,000 in the aggregate.

(b)     terminate the employment of such of its employees or temporarily lay off such of its employees as the Monitor, for and on behalf of and in the name of the applicable CCAA Parties, deems appropriate;

(c)     disclaim, in whole or in part, with the prior consent of the DIP Agent or further Order of the Court, any of the arrangements or agreements of any nature whatsoever and with whomsoever, whether oral or written, of the CCAA Parties, as the Monitor, for and on behalf of and in the name of the CCAA Parties, deems appropriate, in accordance with section 32 of the CCAA; and

(d)     pursue all avenues of refinancing of its Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing,

all of the foregoing to permit the CCAA Parties to proceed with an orderly restructuring of the Business (the "**Restructuring**").

12.     **THIS COURT ORDERS** that each CCAA Party shall provide each of the relevant Landlords with notice of the CCAA Parties' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant Landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes a CCAA Party's entitlement to remove any such fixture under the provisions of the applicable Lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such Landlord and the applicable CCAA Party, or by further Order of this Court upon application by the Monitor on at least two (2) days notice to such Landlord and any such secured creditors. If a CCAA Party disclaims the Lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such  Lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the Lease shall be without prejudice to such CCAA Party's claim to the fixtures in dispute.

13.    **THIS COURT ORDERS** that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer, the Landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the CCAA Parties and the Monitor 24 hours' prior written notice, and (b) at the effective time of the disclaimer, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the CCAA Parties in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

**NO PROCEEDINGS AGAINST THE CCAA PARTIES OR THE PROPERTY**

14.    **THIS COURT ORDERS** that until and including November 8, 2024, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the CCAA Parties or the Monitor (or their respective employees, agents and representatives acting in such capacity), or affecting the Business or the Property, except with the prior written consent of the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the CCAA Parties or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

15.    **THIS COURT ORDERS** that, to the extent any prescription, time or limitation relating to any Proceeding against or in respect of any CCAA Party that is stayed pursuant to this Order may expire, the term of such prescription, time or limitation period shall hereby be deemed to be extended by a period equal to the Stay Period.

**NO EXERCISE OF RIGHTS OR REMEDIES**

16.    **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the CCAA Parties or the Monitor (or their respective employees, agents and representatives acting in such capacity), or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Monitor, or leave of this Court, provided that nothing in this

Order shall (i) empower the CCAA Parties to carry on any business which the CCAA Parties are not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

**NO INTERFERENCE WITH RIGHTS**

17.    **THIS COURT ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence or permit in favour of or held by the CCAA Parties, except with the prior written consent of the Monitor, or leave of this Court. Without limiting the foregoing, no right, option, remedy, and/or exemption in favour of the relevant CCAA Parties shall be or shall be deemed to be negated, suspended, waived and/or terminated as a result of the insolvency of the CCAA Parties, the commencement of the within proceedings, or any related recognition proceedings, or this Order.

18.    **THIS COURT ORDERS** that, no Person shall be entitled to set off any amounts that: (i) are or may become due to the CCAA Parties in respect of obligations arising prior to the date hereof with any amounts that are or may become due from the CCAA Parties in respect of obligations arising on or after the date of this Order; or (b) are or may become due from the CCAA Parties in respect of obligations arising prior to the date hereof with any amounts that are or maybe become due to the CCAA Parties in respect of obligations arising on or after the date of this Order, in each case without the consent of the Monitor, or leave of this Court, provided that nothing in this Order shall prejudice any arguments any Person may make in seeking leave of the Court or following the granting of such leave.

**CONTINUATION OF SERVICES**

19.    **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with the CCAA Parties or statutory or regulatory mandates for the supply of goods, intellectual property, and/or services, including, without limitation, all computer software, communication and other data services, centralized banking services, cash management services, payroll and benefit services, insurance, transportation services, utility or other services to the

Business or the CCAA Parties, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the CCAA Parties, and that the CCAA Parties shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the CCAA Parties in accordance with normal payment practices of the CCAA Parties or such other practices as may be agreed upon by the supplier or service provider and the applicable CCAA Parties and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

20.     **THIS COURT ORDERS** that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration, in each case, provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the CCAA Parties.  Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

21.     **THIS COURT ORDERS** that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the CCAA Parties with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the CCAA Parties whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the CCAA Parties, if one is filed, is sanctioned by this Court or is refused by the creditors of the CCAA Parties or this Court.

**SECURITIES FILINGS**

22.     **THIS COURT ORDERS** that the decision by the CCAA Parties to incur no further expenses for the duration of the Stay Period in relation to any filings (including financial statements), disclosures, core or non-core documents, and press releases (collectively, the

"**Securities Filings**") that may be required by any federal, provincial or other law respecting securities or capital markets in Canada, or by the rules and regulations of a stock exchange, including, without limitation, the *Securities Act* (Ontario), R.S.O., c. S.5 and comparable statutes enacted by other provinces of Canada, the TSX Company Manual and other rules, regulations and policies of the Toronto Stock Exchange and (collectively, the "**Securities Provisions**"), is hereby authorized, provided that nothing in this paragraph shall prohibit any securities regulator or stock exchange from taking any action or exercising any discretion that it may have of a nature described in Section 11.1(2) of the CCAA as a consequence of the CCAA Parties failing to make Securities Filings required by the Securities Provisions.

23.    **THIS COURT ORDERS** that none of the directors, officers, employees, or other representatives of the CCAA Parties nor the Monitor (or its employees, agents and representatives acting in such capacity) shall have any personal liability for any failure by the CCAA Parties to make any Securities Filings required by the Securities Provisions during the Stay Period, provided that nothing in this paragraph shall prohibit any securities regulator or stock exchange from taking any action or exercising any discretion that it may have against the directors, officers, employees and other representatives of the CCAA Parties of a nature described in section 11.1(2) of the CCAA as a consequence of such failure by the CCAA Parties. For greater certainty, nothing in this Order is intended to or shall encroach on the jurisdiction of any securities regulatory authorities (the "**Regulators**") in the matter of regulating the conduct of market participants and to issue or maintain cease trader orders if and when required pursuant to applicable securities law. Further, nothing in this Order shall constitute or be construed as an admission by the Regulators that the Court has jurisdiction over matters that are within the exclusive jurisdiction of the Regulators under the Securities Provisions.

**APPOINTMENT OF MONITOR**

24.    **THIS COURT ORDERS** that FTI is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the CCAA Parties with the powers and obligations set out in the CCAA or set forth herein and that the CCAA Parties and their shareholders, partners, members, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the CCAA Parties pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its

obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

25.    **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)    monitor the CCAA Parties' receipts and disbursements;

(b)    report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c)    provide the DIP Agent and its counsel with such financial and other information as agreed to with the DIP Agent, which may be used in these proceedings, including reporting on a basis to be agreed with the DIP Agent;

(d)    assist the CCAA Parties in their preparation of the CCAA Parties' cash flow statements and reporting required by the DIP Agent, which information shall be reviewed with the Monitor and delivered to the DIP Agent and its counsel on a periodic basis, or as otherwise agreed to by the DIP Agent;

(e)    have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the CCAA Parties, to the extent that is necessary to adequately assess the CCAA Parties' business and financial affairs or to perform its duties arising under this Order;

(f)    be at liberty to engage independent legal counsel, advisors, or such other persons, or utilize the services of employees of its affiliates, as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(g)    act as representative (the "**Foreign Representative**") in respect of the within proceedings for the purposes of having these proceedings recognized in a jurisdiction outside of Canada, including acting as a Foreign Representative of the CCAA Parties to apply to the United States Bankruptcy Court for relief pursuant to chapter 15 of the

*United States Bankruptcy Code*, 11 U.S.C.§§ 101-1532, as amended (the "**Bankruptcy Code**"); and

(h)     perform such other duties as are required by this Order or by this Court from time to time.

26.    **THIS COURT ORDERS** that in addition to the powers outlined in paragraphs 24 and 25 and subject to further Orders of the Court, the Monitor is hereby authorized and empowered, but not required, for and on behalf of and in the name of the CCAA Parties and their respective boards of directors (and not in its personal capacity), as the Monitor considers necessary or desirable, in consultation with the DIP Agent, to:

(a)     conduct and control the financial affairs and operations of the CCAA Parties and carry on business of any of the CCAA Parties, including, without limitation:

  (i)     controlling the CCAA Parties' receipts and disbursements;

  (ii)    executing banking and other transactions and executing any documents or taking any other action that is necessary or appropriate for the purpose of the exercise of this power;

  (iii)   executing such documents as may be necessary in connection with any proceedings before this Court or pursuant to any Order of this Court;

  (iv)    taking any action or steps that any of the CCAA Parties can take pursuant to the CCAA, this Order or further Order of this Court, including making distributions or payments;

  (v)     negotiating and entering into agreements with respect to the Business or the Property;

  (vi)    applying to the Court for any orders which may be necessary or appropriate in order to convey the Property of any CCAA Party to a purchaser or purchasers thereof;

(vii)    exercising any shareholder, partner, member or other rights and privileges available to any of the CCAA Parties for and on behalf and in the name of any of them;

(viii)    exercise any powers which may be properly exercised by any board of directors of the CCAA Parties;

(ix)    settling, extending or compromising any indebtedness owing to or by the CCAA Parties;

(x)    initiating, prosecuting and continuing the prosecution of any and all proceedings and defending all proceedings now pending or hereafter instituted with respect to the CCAA Parties, the Business, the Property or the Monitor and to settle or compromise any such proceeding;

(xi)    exercising any rights of the CCAA Parties;

(xii)    applying for any permits, licences, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and in the name of the CCAA Parties;

(xiii)    taking any and all corporate governance actions for the CCAA Parties;

(xiv)    providing instruction and direction to the Assistants of the CCAA Parties;

(b)    preserve, protect and exercise control over the Business or Property, or any parts thereof, including, without limitation, to:

(i)    receive, collect and exercise control over all proceeds of sale of any of the Property;

(ii)    exercise all remedies of the CCAA Parties in collecting monies owed or hereafter owing to the CCAA Parties and to enforce any security held by the CCAA Parties;

(iii)    execute, assign, issue and endorse documents of whatever nature in respect of any of the Property for any purpose pursuant to this Order;

(c)        conduct investigations from time to time, including, without limitation, examining under oath any Person reasonably thought to have knowledge relating to any of the CCAA Parties, the Business or the Property and compelling any such Person to produce any books, records, accountings, correspondence or documents or papers, electronically stored otherwise,  in that Person's possession, custody, control or power relating to the CCAA Parties, the Business or the Property; and

(d)        take any steps, enter into any agreements, execute any documents, incur any obligations or take any other action necessary, useful or incidental to the exercise of any of the aforesaid powers,

and in each case where the Monitor takes any such actions or steps, it shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons, including the CCAA Parties, and without interference from any other Person.

27.     **THE COURT ORDERS** that the Monitor shall, subject to the Cash Management System, be authorized and empowered, but not required, to operate and control, for and on behalf of and in the name of the CCAA Parties, all of the CCAA Parties' existing accounts at any financial institution (each an "**Account**" and, collectively, the "**Accounts**") in such manner as the Monitor, in its sole discretion, deems necessary or appropriate, including, without limitation, to:

(a)        exercise control over the funds credited to or deposited in the Accounts;

(b)        effect any disbursement from the Accounts permitted by this Order or any other Order of this Court;

(c)        give instructions from time to time with respect to the Accounts and the funds credited or deposited therein, including to transfer the funds credited to or deposited in such Accounts to such other account or accounts as the Monitor may direct; and

(d)        add or remove Persons having signing authority with respect to any Account or to direct the closing of any Account.

28.     **THE COURT ORDERS** that the CCAA Parties and their directors, officers, employees and agents, accountants, auditors and all other Persons having notice of this Order shall cooperate with the Monitor in discharging its duties and forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the CCAA Parties.

29.     **THIS COURT ORDERS** that neither the Monitor nor any employee, representative or agent of the Monitor shall be deemed to: (i) be a director, officer, employee or trustee of the CCAA Parties, (ii) be a legal representative or Person to whom section 150(3) of the *Income Tax Act* (Canada) applies; (iii) assume any obligation of the CCAA Parties or any one of them; or (iv) assume any fiduciary duty towards the CCAA Parties or any other Person, including any creditor or shareholder of the CCAA Parties.

30.     **THIS COURT ORDERS** that the Monitor shall not be liable for any employee-related liabilities in respect of the employees of the CCAA Parties, including any successor employer liabilities as provided for in Section 11.8(1) of the CCAA. Nothing in this Order shall cause the Monitor to be liable for any employee-related liabilities in respect of the employees of the CCAA Parties, including wages, severance pay, termination pay, vacation pay, and pension or benefits amounts.

31.     **THIS COURT ORDERS** that by fulfilling its obligations hereunder the Monitor shall not be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

32.     **THIS COURT ORDERS** that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations

thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation.  The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

33.    **THIS COURT ORDERS** that that the Monitor shall provide any creditor of the CCAA Parties with information provided by the CCAA Parties in response to reasonable requests for information made in writing by such creditor addressed to the Monitor.  The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph.  In the case of information that the Monitor has been advised by the CCAA Parties is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor may agree.

34.    **THIS COURT ORDERS** that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part.  Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

35.    **THIS COURT ORDERS** that the Monitor, counsel to the Monitor, and counsel to the Pre-Filing Agent, the Pre-Filing Lenders, the DIP Agent and the DIP Lenders shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, whether incurred prior to, on, or subsequent to the date of this Order, by the CCAA Parties, as part of the costs of these proceedings.  The CCAA Parties are hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor and counsel to the DIP Agent on such terms as the parties may agree.

36.    **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

**ADMINISTRATION CHARGE**

37.     **THIS COURT ORDERS** that the Monitor (whether in its capacity as Monitor or Foreign Representative) and counsel to the Monitor and Foreign Representative shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of US$2,000,000,  as security for their professional fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order in respect of these proceedings.  The Administration Charge shall have the priority set out in paragraphs 43 and 45 hereof.

**DIP FINANCING**

38.     **THIS COURT ORDERS** that on or after the date of this Order and until the Comeback Hearing (as defined below), Chesswood Group Limited is hereby authorized and empowered to borrow from the DIP Lenders in accordance with and subject to the terms of the DIP Term Sheet (each an "**Interim Borrowing**" and, collectively, the "**DIP Borrowings**"), provided that (i) such DIP Borrowings shall not, individually or in the aggregate, exceed US$18,500,000, until further Order of the Court, (ii) between the date of this Order and the Comeback Hearing, such DIP Borrowings shall not, individually or in the aggregate exceed US$4,000,000, (iii) such DIP Borrowings shall be on terms and subject to the conditions, and accrue interest at the rates, set out in the DIP Term Sheet, and (iv) unless the DIP Agent provides its written waiver, the United States Bankruptcy Court shall have granted an Order pursuant to the Bankruptcy Code:  (a) provisionally recognizing, ordering and giving effect to this Order, and the DIP Charge (as defined below) in the United States, and (b) granting such other provisional relief that is sought by the CCAA Parties, at the request of the DIP Agent.

39.     **THIS COURT ORDERS** that the Monitor, for and on behalf of and in the name of the CCAA Parties, is authorized to execute and deliver the DIP Term Sheet and such credit agreements, security documents, guarantees, and other definitive documents (collectively, the "**Definitive Documents**") as may be required by the DIP Agent or the DIP Financing Majority Lenders (as defined in the DIP Term Sheet) in connection with the DIP Facility and the DIP Term Sheet, and the Monitor is authorized, for and on behalf of and in the name of the CCAA Parties, to pay and perform all of the obligations of the CCAA Parties under the DIP Term Sheet

and any Definitive Documents as and when the same become due and are to be performed notwithstanding any other provisions of this Order.

40.     **THIS COURT ORDERS** that the DIP Agent shall be entitled to the benefit of and is hereby granted a charge, for and on behalf of the DIP Lenders (the "**DIP Charge**") on the Property of each of the CCAA Parties, which DIP Charge shall not secure any obligation that exists before this Order is made.  The DIP Charge shall have the priority set out in paragraphs 43 to 45 hereof.

41.     **THIS COURT ORDERS** that, notwithstanding any other provision of this Order:

(a)     the DIP Agent may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Charge or any of the Definitive Documents;

(b)     upon the occurrence of an event of default under the DIP Term Sheet, Definitive Documents or the DIP Charge, then upon five (5) business days' notice to the CCAA Parties and the Monitor, the DIP Agent may exercise any and all rights and remedies against the CCAA Parties or the Property pursuant to the DIP Term Sheet, Definitive Documents and DIP Charge, including without limitation, to cease making advances to the CCAA Parties and, subject to further Order of this Court, set off and/or consolidate any amounts owing by the DIP Lenders to any of the CCAA Parties against the obligations of the CCAA Parties to the DIP Lenders under the DIP Term Sheet, Definitive Documents or DIP Charge, to make demand, accelerate payment and give other notices, or to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the CCAA Parties or the Property and the appointment of a trustee in bankruptcy of the CCAA Parties; and

(c)     the foregoing rights and remedies of the DIP Agent shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the CCAA Parties or the Property.

42.     **THIS COURT ORDERS** that the DIP Agent and DIP Lenders shall be treated as unaffected in any plan of arrangement or compromise filed by the CCAA Parties under the

CCAA, or any proposal filed by the CCAA Parties under the *Bankruptcy and Insolvency Act* (the "**BIA**") with respect to any DIP Borrowings.

## VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER

43.    **THIS COURT ORDERS** that the priorities of the Administration Charge and the DIP Charge (collectively, the "**Charges**"), as among them, shall be as follows:

> First – Administration Charge (to the maximum amount of US$2,000,000); and

> Second – DIP Charge.

44.    **THIS COURT ORDERS** that the filing, registration or perfection of the Charges shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

45.    **THIS COURT ORDERS** that each of the Charges (all as constituted and defined herein) shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts (including deemed or contractual trusts), liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person , except any Person who is a "secured creditor" as defined in the CCAA that has not been served with the Notice of Application for this Order. The CCAA Parties shall be entitled, at the Comeback Hearing, on notice to those Persons likely to be affected thereby, to seek priority of the Charges ahead of any Encumbrance over which the Charges may not have obtained priority pursuant to this Order.

46.    **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court, the CCAA Parties shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges, without the prior written consent of the Monitor, the DIP Agent and the beneficiaries of the Charges (collectively, the "**Chargees**"), or further Order of this Court.

47.     **THIS COURT ORDERS** that the DIP Term Sheet, the Definitive Documents and the Charges shall not be rendered invalid or unenforceable and the rights and remedies of the Chargees, the DIP Agent and/or the DIP Lenders thereunder shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) or receivership order(s) issued pursuant to the BIA or otherwise, or any bankruptcy order or receivership order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the CCAA Parties, and notwithstanding any provision to the contrary in any Agreement:

(a)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP Term Sheet or the Definitive Documents shall create or be deemed to constitute a breach by the CCAA Parties of any Agreement to which it is a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the CCAA Parties entering into the DIP Term Sheet, the creation of the Charges, the DIP Borrowings, or the execution, delivery or performance of the Definitive Documents; and

(c)     the payments made by the CCAA Parties pursuant to this Order, the DIP Term Sheet or the Definitive Documents, including the DIP Borrowings, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

48.     **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the CCAA Parties' interests in such real property leases.

**SERVICE AND NOTICE**

49.    **THIS COURT ORDERS** that the Monitor shall (i) without delay, publish in The Globe and Mail a notice containing the information prescribed under the CCAA, (ii) within five (5) days after the date of this Order, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner (including by electronic message to the email addresses as last shown in the CCAA Parties' books and records), a notice to all known creditors who have a claim against the CCAA Parties of more than $1000, and (C) prepare a list showing the names and addresses of such creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder, provided that the Monitor shall not make the names and addresses of individuals who are creditors publicly available, unless otherwise ordered by the Court.

50.    **THIS COURT ORDERS** that the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website at http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/e-service-protocol/) shall be valid and effective service.  Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission.  This Court further orders that a case website shall be established in accordance with the Protocol with the following URL http://cfcanada.fticonsulting.com/Chesswood (the "**Monitor's Website**").

51.    **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Protocol or the CCAA and the regulations thereunder is not practicable, the CCAA Parties and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery, facsimile transmission or electronic message to the CCAA Parties' creditors or other interested parties at their respective addresses as last shown in the books and records of the CCAA Parties and that any such service or distribution shall be deemed to be received on the earlier of (i) the date of forwarding thereof, if

sent by electronic message on or before 5:00 p.m. prevailing Eastern Time (or on the next business day following the date of forwarding thereof is sent on a non-business day; (ii) the next business day following the date of forwarding thereof, if sent by courier, personal delivery, facsimile transmission or electronic message sent after 5:00 p.m. prevailing Eastern Time; or (iii) on the third (3rd) business day following the date of forwarding thereof, if sent by ordinary mail.

52.     **THE COURT ORDERS** that the CCAA Parties and the Monitor and their respective counsel are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, including any notices, or other correspondence, by forwarding copies thereof by electronic message to the CCAA Parties' creditors or other interested parties and their advisors. For greater certainty, any such distribution or service shall be deemed to be in satisfaction of a legal or judicial obligation, and notice requirements within the meaning of clause 3(c) of the Electronic Commerce Protection Regulations, Reg. 81000-2-175 (SOR/DORS).

**COMEBACK HEARING**

53.     **THIS COURT ORDERS** that the comeback motion in these CCAA proceedings shall be heard on November 7, 2024 at 2:00 p.m. prevailing Eastern Time (the "**Comeback Hearing**").

**GENERAL**

54.     **THIS COURT ORDERS** that the Monitor may from time to time apply to this Court to amend, vary or supplement this Order or for advice and directions in the discharge of its powers and duties hereunder.

55.     **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the CCAA Parties, the Business or the Property.

56.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the CCAA Parties, the Foreign Representative, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide

such assistance to the CCAA Parties, the Foreign Representative and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the CCAA Parties, the Foreign Representative and the Monitor and their respective agents in carrying out the terms of this Order.

57.     **THIS COURT ORDERS** that each of the CCAA Parties and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

58.     **THIS COURT ORDERS** that any interested party (including the CCAA Parties and the Monitor) may apply to this Court to vary or amend this Order at the Comeback Hearing on not less than five (5) calendar days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

59.     **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. prevailing Eastern Time on the date of this Order.

Digitally signed by
Jessica Kimmel
Date: 2024.10.29
17:47:30 -04'00'

Court File No.:  CV-24-00730212-00CL

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CHESSWOOD GROUP LIMITED, et al.

|  | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>Proceeding Commenced at Toronto |
|---|---|
|  | **INITIAL ORDER** |
|  | **BLAKE, CASSELS & GRAYDON LLP**<br>199 Bay Street<br>Suite 4000, Commerce Court West<br>Toronto, Ontario M5L 1A9<br><br>**Kelly Bourassa**, LSO #43062R<br>Tel:    403-260-9697<br>Email:  kelly.bourassa@blakes.com<br><br>**Milly Chow**, LSO #35411D<br>Tel:    416-863-2594<br>Email:  milly.chow@blakes.com<br><br>**Jake Harris**, LSO #85481T<br>Tel:    416-863-2523<br>Email:  jake.harris@blakes.com<br><br>Lawyers for the Applicant |



ONTARIO SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

# COUNSEL/ENDORSEMENT SLIP

**COURT FILE NO.: CV-24-00730212-00CL**          **DATE:** 29 October 2024

**NO. ON LIST:** 1

**TITLE OF PROCEEDING:**

**IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CHESSWOOD GROUP LIMITED, CASE FUNDING INC., CHESSWOOD HOLDINGS LTD., CHESSWOOD US ACQUISITIONCO LTD., PAWNEE LEASING CORPORATION, LEASE-WIN LIMITED, WINDSET CAPITAL CORPORATION, TANDEM FINANCE, INC., CHESSWOOD CAPITAL MANAGEMENT INC ., CHESSWOOD CAPITAL MANAGEMENT USA INC ., RIFCO NATIONAL AUTO FINANCE CORPORATION, RIFCO INC., WAYPOINT INVESTMENT PARTNERS INC. and 1000390232 ONTARIO INC.**
**BEFORE:** JUSTICE KIMMEL

## PARTICIPANT INFORMATION

**For Plaintiff, Applicant, Moving Party:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| Kelly Bourassa | Applicant, Royal Bank of Canada | kelly.bourassa@blakes.com |
| Milly Chow | | milly.chow@blakes.com |
| Jake Harris | | jake.harris@blakes.com |

**For Defendant, Respondent, Responding Party:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| Lisa S. Corne | Huntington Bank | lcorne@dickinsonwright.com |
| Saneea Tanvir | Chesswood Group | stanvir@mccarthy.ca |

**For Other, Self-Represented:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| Dave Rosenblat | Counsel to the Monitor, FTI Consulting | drosenblat@osler.com |
| Marc Wasserman | | mwasserman@osler.com |
| Jeffrey Rosenberg | Monitor, FTI Consulting | Jeffrey.rosenberg@fticonsulting.com |

| Jodi Porepa | | Jodi.porepa@fticonsulting.com |
| --- | --- | --- |

## ENDORSEMENT OF JUSTICE KIMMEL:

[1]   This application is brought by the Royal Bank of Canada ("RBC"), in its capacity as administrative agent and collateral agent (the "Agent") on behalf of a group of first secured lenders to the Chesswood Group under existing Credit Facilities.  These lenders are: RBC, The Toronto-Dominion Bank, The Huntington National Bank, M&T Bank, Canadian Imperial Bank of Commerce, and Laurentian Bank of Canada (collectively, the "Existing Lenders").

[2]   The Agent seeks an initial order and related relief under the *Companies" Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA").

[3]   The Chesswood Group are the named CCAA Parties.  This group of companies is comprised of a Canadian public TSX-listed parent company and various affiliated holding and operating companies.

[4]   The Chesswood Group does not oppose the Initial Order under the CCAA sought by the Existing Lenders.  Other lenders with registered security against the property of the CCAA Parties received little if any advance notice of this motion and no other stakeholders appeared.

[5]   The Proposed Monitor, FTI Consulting Canada Inc. ("FTI" or the "Proposed Monitor") recommends in in its October 29, 2024 pre-filing report that the court grant the proposed Interim Order.

[6]   The facts with respect to this Application are summarized in the Agent's factum filed in support of this motion and more fully set out in the affidavit of Wenwei (Wendy) Chen sworn October 28, 2024 (the "Chen Affidavit").  Capitalized terms not otherwise defined in this endorsement shall have the meanings ascribed to them in the Agent's factum.  The summary of background facts below has been largely extracted from the Agent's factum.

### Background to this Application

<u>Obligations of the CCAA Parties</u>

[7]   As at October 24, 2024, the Chesswood Group owed the Existing Lenders US$66,254,723.30 and C$92,797,926.72 (the "Indebtedness") under their Credit Facilities.

In addition, there are outstanding letters of credit of US$4,000,000 and C$6,600,000 issued under the Existing Credit Agreement.

[8]    The Chesswood Group is in default of its obligations to the Existing Lenders under the Existing Credit Agreement.  This Indebtedness is secured by all of the existing undertaking and property of the Chesswood Group.  Some of the members of the Chesswood Group have provided guarantees of the Indebtedness that are fully secured (collectively, the "Existing Guarantees").

[9]    Certain members of the Chesswood Group are servicers of equipment loans and leases that have been sold to securitization vehicles or directly to third-party funders to generate funding (i.e., the upfront payment or purchase price) that the Chesswood Group then redeployed to grow its business.  Two members of the Chesswood Group, Pawnee and Rifco, along with certain special purpose securitization vehicles not subject to these proceedings ("SPVs"), are party to certain securitization agreements (the "Securitization Agreements") with the various Securitization Funders.

[10]   None of the CCAA Parties are SPVs. The Securitization Agreements generally contemplate that the applicable Chesswood Group entity is required to continue to administer or "service" the loans and leases. The Securitization Agreements generally also permit the Securitization Funders to replace the applicable Chesswood Group entity as servicer if specified events occur, including in some instances, an insolvency of the applicable servicer or the Borrower.

[11]   Counsel for the Agent advises that the proposed Initial Order is structured so as to minimally interfere with the normal operations of the Chesswood Group in connection with these Securitization Agreements and the Securitization Funders.  The Initial Order is not intended to affect the existing rights of those stakeholders, although there does need to be some co-ordinated cash management that the Monitor is aware of. The Securitization Funders will have the opportunity to satisfy themselves of this in advance of the comeback hearing.  The Monitor intends to prioritize discussions with the stakeholders involved in that aspect of the business.

Events and Defaults Leading to the CCAA Filing

[12]   A special committee of Chesswood directors (the "Special Committee") was appointed in January 2024 to review the Chesswood Group's strategic options. On June 14, 2024, Chesswood announced that the Special Committee had come to the view that it was in the Chesswood Group's best interests to actively pursue a sale of one or more of its business units or the company as a whole, and failing such sale (or sales), to commence an orderly

winddown of one or more of its business units. Also on June 14, 2024, after reviewing an annual external audit of its Borrowing Base, Chesswood announced that it was in breach of its borrowing base covenants contained in the Existing Credit Agreement (the "Borrowing Base Event of Default").

[13]  Other Events of Default (together with the Borrowing Base Event of Default, the "Events of Default") have occurred.  The Existing Lenders agreed to  agreed to waive certain Events of Default for a limited period (the "Waiver Period") to allow the Chesswood Group to sell certain of its assets to pay down the Indebtedness.  However, the sale efforts have not solved the financial challenges that the Chesswood Group is facing.  To date, it has been unable to effect sales of a large part of its business.  The Waiver Period ended on October 16, 2024.

[14]  On October 28, 2024, the Agent formally demanded payment from the Chesswood Group via written notices (the "Demands") in accordance with the Existing Credit Agreement.  The Agent also delivered notices of intention to enforce security pursuant to Section 244 of the *Bankruptcy and Insolvency Act* (Canada).

[15]  The Chesswood Group is insolvent, unable to meet its obligations as they come due, unable to repay the Existing Lenders and does not have the cash flow to fund its operations in the ordinary course.   The Chesswood Group has over US$800 million of loan and lease assets securitized with the Securitization Funders. Some Securitization Funders are, in accordance with the provisions of the related Securitization Agreements, holding back funds owing to the Chesswood Group as a result of loan asset performance issues.  Other assets are tied up because the Securitization Funders have already terminated the Chesswood Group entity as the service provider due to loan asset performance issues.

[16]  The Ontario Securities Commission issued a failure to file cease trade order (the "Cease Trade Order") against Chesswood on or about August 15, 2024. The Cease Trade Order has not been lifted.

[17]  The Existing Lenders are prepared to provide necessary interim financing to the Chesswood Group on the conditions that Chesswood Group be granted protection under the CCAA and that the Monitor be granted expanded powers to oversee and manage the Chesswood Group's business and financial affairs.  The proposed Initial Order is designed to satisfy these conditions.

**Analysis of Issues for Granting the Initial Order**

The Agent's Standing and Status of the CCAA Parties: the CCAA Applies

[18]    The Agent and the Existing Lenders are creditors of the Chesswood Group pursuant to the Existing Credit Agreement and the Existing Guarantees and are therefore empowered by section 5 of the CCAA to bring the Application.  There is precedent for creditor led CCAA orders.  See for example, *ATB Financial v Metcalfe & Mansfield Alternative Investments II Corp*, 2008 CanLII 2172 and *Miniso International Hong King Limited v. Migu Investments Inc.,* 2019 BCSC 1234 at para 45.

[19]    Section 9(1) of the *CCAA* provides that an application under the *CCAA* may be made to the court that has jurisdiction in the province where the debtor company has its "head office or chief place of business."   The Chesswood Group is headquartered in Toronto, Ontario.

[20]    The Chesswood Group entities do business in Canada and have liabilities in excess of $5,000,000 and are insolvent within the meaning of s. 2 of the CCAA and the definition of insolvency under the *Bankruptcy and Insolvency Act*, RSC 1985, c B-3, as amended (the "BIA").  The Chesswood Group does not have the cash flow to fund its operations in the ordinary course. The Chesswood Group entities need immediate access to funds, which are only available under the DIP Facility including the Initial Advance to be funded on October 31, 2024.

[21]    The Proposed Monitor is of the view that the CCAA Parties are insolvent and that the Chesswood Group will require interim financing to continue their operations during these CCAA proceedings.

[22]    I am satisfied that the CCAA Parties (Chesswood Group entities) are debtor companies to which the CCAA applies.

The Stay

[23]    Given the Chesswood Group's current financial position and lack of liquidity, a stay of proceedings under s. 11.02 (1) of the CCAA is necessary to maintain the *status quo* and to give the Chesswood Group breathing space to allow the Monitor to stabilize operations for the benefits of all of the stakeholders of the Chesswood Group.  The stay during the Initial Stay Period until the come-back hearing, scheduled for November 7, 2024 is appropriate in the circumstances.  The Agent has acted with due diligence and in good faith to bring forward this application after the expiry of the extended Waiver Period on October 16, 2024.

[24]    The Agreed Budget (as defined in the DIP Financing Term Sheet) indicates that the Chesswood Group will have sufficient funds to continue to operate during the Initial Stay Period, provided that the DIP Financing Term Sheet is approved, and the Interim DIP Charge is granted by the Court.

[25]   The Proposed Monitor has reviewed the consolidated cash flow projection of the CCAA Parties which confirms this.

The Proposed Monitor and its Enhanced Powers

[26]   FTI consents to act as the Monitor of the Chesswood Group if the court approves its appointment. It is a trustee within the meaning of section 2 of the BIA and is not subject to any of the restrictions on who may act as a monitor as set out in section 11.7(2) of the CCAA.  Its pre-filing work has provided it with important background and insight into the Chesswood Group and its prior experience acting as a court officer in insolvency and restructuring proceedings renders it qualified to be appointed as the Monitor in this CCAA proceeding.

[27]   The Monitor needs the enhanced powers proposed under the draft order because all of the directors are resigning today. Someone needs to ensure that the operations of the Chesswood Group continue to be carried on for the benefit of all stakeholders.

[28]   Further, since the Chesswood Group has operations, assets and valuable relationships in the U.S., contemporaneously with the commencement of these CCAA proceedings, it is intended that the Monitor, as foreign representative for the Chesswood Group (in such capacity, the "Foreign Representative"), will seek recognition and enforcement of these CCAA proceedings pursuant to an order by the United States Bankruptcy Court for Delaware under Chapter 15 of the United States Bankruptcy Code (the "Chapter 15 Case").

[29]   Sections 11 and 23(1)(k) of the CCAA provide jurisdiction to this Court to grant the Monitor enhanced powers as part of the Initial Order. While these powers are not frequently granted at the stage of an Initial Order, they can be when they are needed in a particular case.  I find it the proposed enhanced powers are "appropriate in light of what is needed in the circumstances" and specifically to allow the Monitor to better manage the debtor companies for the benefit of all stakeholders: see *Re Harte Gold Corp*, 2022 ONSC 653, at paras. 91 and 92, *Re Urbancorp Cumberland 2 GP Inc.*, 2017 ONSC 7649, at para 20 and *Re Inca One Gold Corp/*, 2024 BCSC 1478, at para. 36.

[30]   There is no indication that any other creditors may be prejudiced by the granting of those expanded powers, but they will have a chance to be heard at the comeback hearing if there are any concerns in this regard.

The Administration Charge

[31]   The Agent is seeking an Administration Charge over the property of the Chesswood Group in favour of the Monitor and its counsel to secure payments of their reasonable fees and disbursements incurred both before and after filing in the maximum amount of $2,000,000.

[32]   These Professionals will have extensive involvement with the conduct of the CCAA proceedings and the Chapter 15 Case, including the oversight of the Chesswood Group during the proceedings. The Professionals have contributed and will continue to contribute to an orderly sale or wind down of the Chesswood Group's business.

[33]   The criteria to be considered in determining whether to grant this super-priority charge for the fees and expenses of financial, legal and other advisors and experts under s. 11.52 of the CCAA favour the granting of the proposed Administration Charge in this case.

<u>The DIP Financing and Charge</u>

[34]   Section 11.2 of the CCAA allows the court to approve the DIP Facility and an Interim DIP Charge that ranks in priority to the Chesswood Group's secured creditors, on notice to those secured creditors that would be affected, and in an amount that this Court considers appropriate having regard to the Agreed Budget.  Secured creditors who were not on notice of the motion for the Initial Order will be given the opportunity to raise any objections to this at the comeback hearing.

[35]   Having considered the factors under section 11.2(4) of the CCAA,  I find the proposed DIP Facility and DIP Charge to be reasonable and appropriate in the circumstances. The terms of the loan are limited to those terms that are reasonably necessary for the CCAA Parties' continued operations in the ordinary course of business during the initial Stay Period.  The Monitor has reviewed the terms of the DIP Facility and confirmed that they are within the range of reasonable market terms in comparable circumstances.  The Monitor has also reviewed and confirmed the consolidated cash flow forecast that establishes the need for and intended use of these funds in the short and long term.

[36]   There are some particular characteristics of the DIP Facility Terms and DIP Charge that are a function of the particular nature of these insolvency proceedings.

   a.   The DIP Facility will be primarily used to fund operating expenses while anticipated receipts will be used to fund past and continuing interest accruing under the Existing Credit Facilities.  Payment of that interest was a condition of the agreement of the Existing Lenders to provide the DIP Facility.  The DIP Facility Terms contemplate an overall combined maximum total of pre-filing debt and DIP draws of approximately $165 million. The Monitor considers this to be reasonable in the circumstances. The Proposed Monitor has the benefit of a preliminary pre-filing security review and believes that those interest payments would have been paid to the Existing Lenders in priority to other secured and unsecured creditors of the CCAA Parties in any event.

   b.   The DIP Facility will be used to fund the pre and post-filing fees of the Agent, the Proposed Monitor and their legal fees and those of the CCAA Parties.

c. The maximum permitted borrowing amount at this time is more than what is needed to sustain the Chesswood Group's operations through the initial Stay Period because it is also intended to cover an extended period beyond given that the final recognition order in the United States will not be considered until later in November. Providing for a higher cap now will avoid the time and expense of multiple motions in the United States.

d. While the Initial Advance to be funded during the initial Stay Period is limited to US$4,000,000, with an Interim DIP Charge in the same amount, approval of the full Interim DIP Charge, set at US$18,500,000, is necessary so that amount is available up until the issuance of the Final Recognition Order (as defined in the DIP Financing Term Sheet) in the Chapter 15 Case.

[37] The Monitor has reviewed these and the other DIP Facility Terms and recommends their approval.

<u>Suspending Securities Reporting and Filing Requirements</u>

[38] Due to the issuance of the Cease Trade Order and the Chesswood Group's financial condition, the Agent is seeking authorization from this Court to dispense with certain securities reporting and filing requirements of Chesswood during the length of the stay of proceedings.

[39] In circumstances where such filing requirements would cause the debtor and the monitor to incur significant costs in order to prepare the necessary filings, this Court has dispensed with the requirement to make such filings, particularly because the monitor makes detailed financial information available publicly on its website: see *Humble & Fume Inc. et al*, Endorsement of Honourable Justice Cavanagh dated 5 January 2024 (ONSC [Commercial List]), Court File No CV-24-00712366-00CL (Initial Order) at paras 15-16.

[40] The Monitor will be posting detailed financial information in respect of the Chesswood Group on its website for these CCAA proceedings. As a result, dispensing with the filing requirements is appropriate in the circumstances.

[41] The proposed language has been adapted to correspond with language approved by the OSC in other proceedings where such relief has been granted.

**Initial Order and Comeback**

[42] The Agent has worked with the CCAA Parties and the Proposed Monitor to limit the relief sought on this initial application to only the relief that is reasonably necessary in the circumstances for the continued operation of the business of the CCAA Parties within the

initial stay period as required by s. 11.001 of the CCAA, recognizing that there is more uncertainty because of the enhance role that will be granted to the Monitor from the outset.

[43]   I am satisfied that the requested relief is necessary for the immediate stabilization of their businesses and to protect it and the interests of its various stakeholders.  The proposed order is consistent with the Commercial List Model Order (with some additions representative of the specific circumstances of this case).

[44]   For the foregoing reasons, the Initial Order is granted, in the revised form signed by me today.

[45]   The come-back hearing has been scheduled before me on November 7, 2024 commencing at 2:00 p.m. on zoom.

KIMMEL J.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re:* | Chapter 15 |
| CHESSWOOD GROUP LIMITED, *et al.*,[1] | Case No.  24- ( ___ ) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## CONSOLIDATED LIST FILED PURSUANT TO BANKRUPTCY RULE 1007(a)(4)(B)

FTI Consulting Canada Inc. ("FTI") is  the court-appointed monitor and duly authorized foreign representative (the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code of the above-captioned debtors (the "Debtors"), which  are the subject of jointly-administered proceedings under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 in the Ontario Superior Court of Justice, in Toronto, Ontario, Canada (the "Canadian Proceedings").  The Petitioner hereby files this list pursuant to Rule 1007(a)(4)(B) of the Federal Rules of Bankruptcy Procedure and states as follows:

1.      **Administrators in Foreign Proceedings Concerning the Debtors:**

FTI is the only court-appointed "administrator" in the Canadian Proceedings. The Petitioner believes that, other than the Canadian Proceedings and these chapter 15 cases, there are no foreign proceedings pending with respect to any of the Debtors.

> Toronto-Dominion Centre
> TD South Tower
> 79 Wellington St W Suite 2010
> Toronto, ON M5K 1G8

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses:  Chesswood Group Limited (6730), Chesswood Holdings Ltd. (8445), Lease-Win Limited (2081), Case Funding Inc. (8049), 1000390232 Ontario Inc. (0232), Chesswood Capital Management Inc. (4785), Chesswood Capital Management USA Inc. (3582), Chesswood U.S. Acquisitionco Ltd. (4029), Pawnee Leasing Corporation (4533), Tandem Finance Inc. (1260), Windset Capital Corporation (4857), Rifco Inc. (7815), and Rifco National Auto Finance Corporation (1311).  The Debtors' executive headquarters is located at Chesswood Group Limited, 41 Scarsdale Road, Suite 5, Toronto, ON, M3B 2R2.

**2.      A description of active litigation in the United States involving the Debtors.**

The Petitioner is not aware of any active litigation in the United States involving the Debtors.

**3.      Entities against whom provisional relief is sought pursuant to 11 U.S.C. § 1519.**

A list of such entities is attached hereto on **Exhibit 1**.

| | |
|---|---|
| Dated: October 30, 2024<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP |

*/s/ Kenneth J. Enos*

Kenneth J. Enos (No. 4544)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253
            kenos@ycst.com
-and-

ALSTON & BIRD LLP
Stephen M. Blank (*pro hac vice* admission pending)
William Hao (*pro hac vice* admission pending)
Dylan S. Cassidy (*pro hac vice* admission pending)
90 Park Avenue
New York, New York 10016
Tel: (212) 210-9400
Fax: (212) 210-9444
Email: stephen.blank@alston.com
        william.hao@alston.com
        dylan.cassidy@alston.com

*Counsel for the Petitioner*

# EXHIBIT 1

**Parties Against Whom Provisional Relief Is Sought**

| Name | Address | City | Province/State | Postal/Zip Code | Country |
|---|---|---|---|---|---|
| Chesswood Capital Management (CCM) | 41 Scarsdale Road, Suite 5 | Toronto | ON | M3B 2R2 | Canada |
| Waypoint Private Credit Fund LP | 1133 Yonge Street, Suite 603 | Toronto | ON | M4T 2Y7 | Canada |
| Sun Life Financial Trust Inc | 227 King Street South | Waterloo | ON | N3J 4C5 | Canada |
| Deutsche Bank Trust Company Americas | 60 Wall Street, 24th Floor | New York | NY | 10005 | United States |
| A.G. ADJUSTMENTS | PO Box 9090 | Melville | NY | 11747 | United States |
| BRYAN D. MARCUS, PC | 150 W 2ND ST STE 250 | Royal Oak | MI | 48067 | United States |
| COHN & DUSSI, LLC | 255 STATE ST STE 7B | Boston | MA | 02109 | United States |
| DARCY & DEVASSY PC | 444 N MICHIGAN AVE STE 3270 | Chicago | IL | 60611 | United States |
| DAVIS HARTMAN WRIGHT | 209 POLLOCK ST | New Bern | NC | 28560 | United States |
| DELOITTE & TOUCHE LLP | PO BOX 844708 | Dallas | TX | 75284-4708 | United States |
| DORSEY & WHITNEY LLP | PO BOX 1680 | Minneapolis | MN | 55480 | United States |
| EXCELERON DESIGNS | 357 CYPRESS DR STE 5 | Tequesta | FL | 33469 | United States |
| FERNS, ADAMS & ASSOCIATES | 2815 MITCHELL DR STE 210 | Walnut Creek | CA | 94598 | United States |
| FIELD EFFECT SECURITY INC. | 207-825 Exhibition Way | Ottawa | ON | K1S 5J3 | Canada |
| HELIX PROPERTY MANAGEMENT | PO Box 711 | Fort Collins | CO | 80522 | United States |
| HIQUEST GROUP | 1900 S NORFOLK ST STE 245 | San Mateo | CA | 94403 | United States |
| INOVATEC | FOUR BENTALL CENTRE 1055 DUNSMUIR ST STE 3501 PO BO | Vancouver | BC | V7X 1K8 | Canada |
| JARDINE, STEPHENSON, BLEWETT & WEAVER, PC | PO BOX 2269 | Great Falls | MT | 59403-2269 | United States |
| JENNINGS, HAUG KELEHER MCLEOD | 2800 N CENTRAL AVE STE 1800 | Phoenix | AZ | 85004-1049 | Canada |
| JOHNSON MUFFLY & DAUSTER, PC | 323 S COLLEGE AVE STE 1 | Fort Collins | CO | 80524 | United States |
| LAW OFFICES OF BENJAMIN E. KELLY,  P.S. | 9218 ROOSEVELT WAY NE | Seattle | WA | 98115 | United States |
| LEVI, WITTENBERG, HARRITT, ET AL, P.A. | PO BOX 730 | Sumter | SC | 29150 | United States |
| LEWIS GIANOLA PLLC | PO BOX 1746 | Charleston | WV | 25326 | United States |
| LTi TECHNOLOGY SOLUTIONS | 4139 SOUTH 143RD CIRCLE | Omaha | NE | 68137 | United States |
| LUMEN | PO BOX 52187 | Phoenix | AZ | 85072-2187 | United States |
| MARKOFF LAW LLC | 29 N WACKER DR STE 1010 | Chicago | IL | 60606 | United States |
| MCCULLOUGH, LLC | 1579 MONROE DR STE 251 | Atlanta | GA | 30324 | United States |
| MICHAEL DANOFF & ASSOCIATES, PC | 1225 RIO GRANDE BLVD NW | ALBUQUERQUE | NM | 87104 | United States |
| PAYNET, INC | PO BOX 71221 | Charlotte | NC | 28272-1221 | United States |
| PLANTE & MORAN, PLLC | 16060 COLLECTIONS CENTER DR | Chicago | IL | 60693 | United States |
| PLATZER, SWERGOLD, GOLDBERG, KATZ & JASLOW LLP | 475 PARK AVE S 18TH FLR | New York | NY | 10016 | United States |
| PROGRESS SOFTWARE CORPORATION | PO BOX 84-5828 | Boston | MA | 02284-5828 | United States |
| PUREWATER DYNAMICS, INC | 30 Kalamath St | Denver | CO | 80223 | United States |
| RICHARDS LAYTON & FINGER | 920 N. King St. | Wilmington | DE | 19801 | United States |
| RUSH, MARSHALL, JONES, WATSON AND HOUCHINS, PA | PO BOX 3146 | Orlando | FL | 32802-3146 | United States |
| SIMPSON LAW FIRM P.A. | PO BOX 2058 | Madison | MS | 39130 | United States |
| SMITH DEBNAM ATTORNEYS AT LAW | PO BOX 176010 | Raleigh | NC | 27619-6010 | United States |
| SULLIVAN & PETERSON | 10157 SW BARBUR BLVD STE 208C | Portland | OR | 97219 | United States |
| THE OAKES LAW FIRM | 110 VETERANS MEMORIAL BLVD STE 560 | Metairie | LA | 70005 | United States |
| THOMSON REUTERS | PO BOX 6292 | Carol Cream | IL | 60197-6292 | United States |
| TRUEPIC INC | 402 W BROADWAY STE 400/PMB#5021 | San Diego | CA | 92101 | United States |
| WELLS FARGO CORPORATE TRUST SERVICES | PO BOX 1450 | MINNEAPOLIS | MN | 55485-8113 | United States |
| WELTMAN, WEINBERG & REIS CO, LPA | PO BOX 74106 | Cleveland | OH | 44101-4106 | United States |
| XEROX BUSINESS SOLUTIONS SOUTHWEST | PO BOX 674911 | Dallas | TX | 75267-4911 | United States |
| JM Hospitality Solutions LLC | 1310 SE Maynard Rd, Suite 101 | Cary | NC | 27511 | United States |
| K. Lowe Plumbing, Inc | 3750-C Industrial Ave | Rolling Meadows | IL | 60008 | United States |
| Horizontal Vertical & General Construction LLC | 14827 Loggerhead Dr | Naples | FL | 34120 | United States |
| Doran Productions | 22617 44th Ave W #A | Mountlake Terrace | WA | 98043 | United States |
| Lincoln Sign Co. | 916 Springdale Dr | Exton | PA | 19341 | United States |
| Petroleum Solutions Inc DBA JF Petroleum Group | 100 Perimeter Park Drive, Suite H | Morrisville | NC | 27560 | United States |
| PR Refrigeration & HVAC | 680 Route 211 E 3B #224 | Middletown | NY | 10941 | United States |
| ABM Equipment Compnay Inc | 13911 NW 3rd CT #100 | Vancouver | WA | 98685 | United States |
| LANIER AIR PRODUCTS, INC. | 210 Collins Road | Toccoa | GA | 30577 | United States |
| BESPOKE SEVEN LLC | 55 CONSTANT AVENUE | LODI | NJ | 07644 | United States |
| FIRST COAST HYDRAULIC REPAIR INC | PO BOX 37622 | JACKSONVILLE | FL | 32236 | United States |
| Michael F. Soldo LLC | 46 Jennifer Lane | Aston | PA | 19014 | United States |
| DIVERSIFIED RACK & SHELVING INC. | 603 RT 130 NORTH | EAST WINDSOR | WI | 08520 | United States |
| EnergiSystems | 850 Parkway Ln | Billings | MT | 59101 | United States |
| Culinex | 1802 First Ave S | Fargo | ND | 58108 | United States |
| ALPHA MANAGEMENT GROUP OF SUNNY FLORIDA LLC DBA Alpha Play | 1481 SW 153 Way | Davie | FL | 33326 | United States |
| Trailer Source Inc | 6064 W State Steet | Hurricane | UT | 84737 | United States |
| Apex Build & Remodel LLC | 23401 SE Borges Rd | Damascus | OR | 97089 | United States |
| HCS Petroleum Equipment Inc. | 2301 West 29th North | Wichita | KS | 67204 | United States |
| Spatco Energy Solutions LLC | 5555 OAKBROOK PARKWAY, SUITE 440 | NORCROSS | GA | 30093 | United States |
| Freeman Signs, Inc. | 3883 N. Monaco Pkwy | Denver | CO | 80207 | United States |
| ESTI Warehouse | 410 Long Island Ave | Wyandanch | NY | 11798 | United States |
| G & K Home Services LLC | 581 W. Market St | York | PA | 17401 | United States |
| Precor INC | 20031 142nd Ave. NE | Woodinville | WA | 98072 | United States |
| RBC Royal Bank - Global Loans Administration | 155 Wellington Street West, 8th Floor | Toronto | ON | M5V 3K7 | Canada |
| Kim Reichert | 4288 Ryders Ridge Blvd | Sylvan Lake | AB | T4S 0M5 | Canada |
| Mark Wilson's Better Used Cars | 700 York Road | Guelph | ON | N1E 6A5 | Canada |
| Good Fellows Auto Wholesale | 3675 Keele Street | North York | ON | M3J 1M6 | Canada |
| Progressive Auto Repair Ltd | 4053 Ogden Road SE | Calgary | AB | T2G 4P2 | Canada |
| Race Auto Group | 692 Windmill Road | Dartmouth | NS | B3B 2A5 | Canada |
| Ride Time | 87 Oak Point Highway | Winnipeg | MB | R2R 0T8 | Canada |
| Aftaab Gill | 106 Drinkwater Road | Brampton | ON | L6Y 5C4 | Canada |
| defi Solutions, LLC | 1600 Solana Blvd, Suite 8120 | Westlake | TX | 76262 | United States |
| Dominion Leasing Software | PO Box 550 | Powhatan | VA | 23139 | Canada |
| Equifax Canada Inc. | PO Box 4265 | Toronto | ON | M5W 5T7 | Canada |
| Flinks | 1275 Avenue des Canadiens-de-Montreal | Montreal | QC | H3B 5E8 | Canada |
| Harmeet Singh | 22 Twistleton St | Caledon | ON | L7C 3V9 | Canada |
| Innov8 Digital Solutions | 809 Finns Road | Kelowna | BC | V1X 5B8 | Canada |
| SalesForce.com Canada Corp | C/O 913321 | Toronto | ON | M5W 0E9 | Canada |
| Xplornet Enterprise Solutions | 300 Lockhart Mill Rd | Woodstock | NB | E7M 6B5 | Canada |
| Agnes Molohon | 19 Armitage Cl | Red Deer | AB | T4R 2K5 | Canada |
| Lan Joyce and Lan Vu | 12300 Bridgeport Road | Richmond | BC | V6V 1J5 | Canada |
| Colleen Ranger | 410, 4425 Heritage Way | Lacombe | AB | T4L 2P4 | Canada |
| Joan Benko | 438 Carriage Lane Crossing (1674) | Carstairs | AB | T0M 0N0 | Canada |
| Walter & Dorleen Burym | Box 84 | Stennon | SK | S0A 3X0 | Canada |

| Name | Address | City | Province/State | Postal/Zip Code | Country |
|------|---------|------|----------------|-----------------|---------|
| Gurmit Saran | 7721 Getty Wynd | Edmonton | AB | T5T 4L3 | Canada |
| Eero & Josephine Sorila | 1348 East 35 Ave | Vancouver | BC | V5W 1C1 | Canada |
| John G. Joyce | 12300 Bridgeport Road | Richmond | BC | V6V 1J5 | Canada |
| Lan Vu and Lan Joyce | 12300 Bridgeport Road | Richmond | BC | V6V 1J5 | Canada |
| Ben & Marilyn Keryluke | 145-27475 Township Rd 380 | Red Deer | AB | T4S 2B7 | Canada |
| Moosajee (2012) Family Trust | 1465 Caulder Drive | Oakville | ON | L6J 5T1 | Canada |
| Stirling and Donna McLeod | 15 Lake Ridge | Olds | AB | T4H 1W2 | Canada |
| Dorothy Kilpatrick | 4522 – 47A Ave | Red Deer | AB | T4N 3R3 | Canada |
| Tim & Ruth Peterson | Box 335 | Hanna | AB | T0J 1P0 | Canada |
| Securcor Financial Group | 1100 Burloak Drive, Suite 301 | Burlington | ON | L7L 6B2 | Canada |
| Versa Bank | 1979 Otter Place | London | ON | N5V 0A3 | Canada |
| Connect First Credit Union | 200-2850 Sunridge Blvd. NE | Calgary | AB | T1Y 6G2 | Canada |
| Sun Life Capital Management | 227 King Street South | Waterloo | ON | N2J 4C5 | Canada |
| Genieall | 5535 Eglinton ave West, Unit 218 | Toronto | ON | M9C 5K5 | Canada |
| MNP | 161 Adelaide St. E., Suite 1900 | Toronto | ON | M5C 2V9 | Canada |
| Regus | 161 Bay Street, 27th Floor | Toronto | ON | M5J 2S1 | Canada |
| Salesforce | 10 Bay Street, Suite 400 | Toronto | ON | M5J 2R8 | Canada |
| Broadridge USD | P.O. Box 416423 | Boston | MA | 02241-6423 | Canada |
| CNW | 88 Queens Quay West, Suite 3000 | Toronto | ON | M5J 0B8 | Canada |
| DDL | 111-52 Scarsdale Road | Toronto | ON | M3B 2R7 | Canada |
| Duntrune LLP | 141 Adelaide Street West, Suite 420 | Toronto | ON | M5H 3L5 | Canada |
| EY | 100 Adelaide Street West | Toronto | ON | M5H 0B3 | Canada |
| KPMG | Suite 4600 Bay Adelaide Centre, 333 Bay Street | Toronto | ON | M5H 2S5 | Canada |
| Morgan Stanley - Solium Capital ULC | Suite 1500 600 3rd Avenue SW | Calgary | AB | T2P 0G5 | Canada |
| Solulan Global Inc. | 106 rue Emilien-Marcoux | Blainville | QC | J7C 0B5 | Canada |
| Wells Fargo | PO Box 7446, Station A | Toronto | ON | M5W 3C1 | Canada |
| Wilson Vukelich LLP | 60 Columbia Way, 7th Floor | Markham | ON | L3R 0C9 | Canada |
| RBC Royal Bank - Global Loans Administration | 155 Wellington Street West, 8th Floor | Toronto | ON | M5V 3K7 | Canada |
| Borden Ladner Gervais LLP | Bay Adelaide Centre, East Tower, 22 Adelaide St. W. | Toronto | ON | M5H 4E3 | Canada |
| Bosch | 6696 Financial Dr., Unit #3 | Mississauga | ON | L5N 7J6 | Canada |
| Fundserv Inc. | 333 Bay Street, Suite 2600 | Toronto | ON | M5H 2R2 | Canada |
| HUB International | 265 Exmouth St. | Sarnia | ON | N7T 5M7 | Canada |
| NDEX Systems | 500 Rue Saint-Jacques, Suite 400 | Montreal | QC | M4T 2Y7 | Canada |
| SGGG Fund Services Inc. | 121 King St. W, Suite 300 | Toronto | ON | M5H 319 | Canada |
| Stericycle ULC (Shred-It) | P.O. Box 15781, Station A | Toronto | ON | M5W 1C1 | Canada |
| Chesswood Group Limited | 41 Scarsdale Road, Suite 5 | Toronto | ON | M3B 2R2 | Canada |
| RBC VISA | P.O. Box 4016, Station A | Toronto | ON | M5W 2E6 | Canada |
| Varde Partners | 520 Madison Ave, 34th Floor | New York | NY | 10022 | United States |
| Waypoint Partners | 1133 Yonge Street, Suite 603 | Toronto | ON | M4T 2Y7 | Canada |
| Securities Class Action | 330 Bay Street, Suite 505 | Toronto | ON | M5H 2S8 | Canada |
| BDI a Division of Bell iMobility Inc. | PO Box 4100 PO A | Etobicoke | ON | M9C 0A8 | Canada |
| Bell Mobility Inc. | PO Box 5102 | Burlington | ON | L7R 4R7 | Canada |
| Bill Gosling Outsourcing | 16635 Yonge Street Suite 26 | Newmarket | ON | L3X 1V6 | Canada |
| Broadband Dynamics Canada Inc. | 8757 E. Via de Commercio | Scottsdale | AZ | 85258 | United States |
| Canada Life | Suite 1410, 10405 Jasper Ave | Edmonton | AB | T5J 3N4 | Canada |
| Carfax Canada | 100 Kellogg Lane, Suite 301 | London | ON | N5W 0B4 | Canada |
| Certified Tracking Solutions Inc | 4320 Savannah Dr SW | Edmonton | AB | T6X 1Z9 | Canada |
| CGI Information Systems & Management Consultants Inc | PO Box 12535 | Montreal | QC | H3C 6R1 | Canada |
| City of Red Deer | PO Box 5008 | Red Deer | AB | T4N 3T4 | Canada |
| Cloudways | 52 Springvale | Mosta | Malta | MT20765109 | Malta |
| Collateral Management Solutions Corporation | 405 The West Mall, Suite 110 | Etobicoke | ON | M9C 5J1 | Canada |
| Consolidated Civil Enforcement | 200, 807 Manning Rd NE | Calgary | AB | T2E 7M8 | Canada |
| DealerTrack Canada | 405 The West Mall, Suite 110 | Etobicoke | ON | M9C 5J1 | Canada |
| Empire Life | 144 - 4th Ave | Calgary | AB | T2P 3N4 | Canada |
| ESC Corporate Services Ltd | 445 King Street West, Suite 400 | Toronto | ON | M5V 1K4 | Canada |
| Expert Revenue Systems | 8 Claremont Road, Dublin 4 | Dublin | Dublin | D04 XY86 | Ireland |
| Expert Security Solutions | 4700 60 Street | Red Deer | AB | T4N 7C7 | Canada |
| Homewood Health Inc | 1050 West Pender Street | Vancouver | BC | V6E 3S7 | Canada |
| Imagine It Inc. | Po Box 27140 | Red Deer | AB | T4N 6X8 | Canada |
| Info Grid Systems Inc | 593 Westview Avenue | Ancaster | ON | L9G 1N8 | Canada |
| Inverite | 900 - 2025 Willingdon Ave | Burnaby | BC | V5C 0J3 | Canada |
| Legacy Branding | 6013 48th Ave, Bay 6 | Red Deer | AB | T4N 3V5 | Canada |
| Lexop Solutions Inc | 506 Mcgill, Suite 400 | Montreal | QC | H2Y 2H6 | Canada |
| LiveVox Inc. | Mail Code 8325, PO Box 7247 | Philadelphia | PA | 19170 | United States |
| Matrix Bailiff Services | 31099 - 2929 St Johns St. | Port Moody | BC | V3H 2C2 | Canada |
| Nexus Bailiffs | 434 Tiffin Street | Barrie | ON | L4N 9W8 | Canada |
| NForce Collateral Recovery Inc | 12 Rutherford Road | Brampton | ON | L6W 3J1 | Canada |
| Passtime | 100 - 5118 North Fraser Way | Burnaby | BC | V5J 0H1 | Canada |
| Phone Experts | 4700 - 60th Street | Red Deer | AB | T4N 7C7 | Canada |
| Precision Paralegal Services Inc | 150 - 9th Ave SW | Calgary | AB | T2P 3H9 | Canada |
| Precision Paralegal Services LLP | 14 - 1860 Appleby Line, Suite 122 | Burlington | ON | L7L 7H7 | Canada |
| Ranksy | 10 W Broadway 7th Floor | Salt Lake City | UT | 84101 | Canada |
| Satinwood Coffee Company | RR2, Site 3, Box 7 | Lacombe | AB | T4L 2N2 | Canada |
| Shaw Cablesystems GP | Shaw Cablesystems GP | Calgary | AB | T2P 4Y2 | Canada |
| Solutions by Text | 15110 Dallas Parkway Suite 500 | Dallas | TX | 75248 | United States |
| Stockwatch | PO Box 10371, Pacific Centre | Vancouver | BC | V7Y 1J6 | Canada |
| Tecnoprism Private Limited | 12th Floor, Office #1201, Vihav Supremus, NR Amin, Gotri M | Vadodara | Gujarat | 390021 | India |
| Tiny URL LLC | 3916 N Potsdam Ave Ste 4535 | Sioux Falls | SD | 57104 | United States |
| Trans Union of Canada Inc. | PO Box 15613 Station A | Toronto | ON | M5W 1C1 | Canada |
| CBIZ, Inc. | 1001 Conshohocken State Road, Suite 1-406 | West Conshohocken | PA | 19428-2906 | United States |
| Priority Capital | 174 Green St | Melrose | MA | 02176 | United States |
| Newfoundland & Labrador - Provincial Registration | 100 New Gower Street, Cabot Place, Suite 1100 | St. John's | NL | A1C 5V3 | Canada |
| Prince Edward Island - Provincial Registration | 65 Grafton Street, P.O Box 2140 | Charlottetown | PEI | C1A 8B9 | Canada |
| Nova Scotia - Registry of Joint Stock Companies | PO Box 1529 | Halifax | NS | B3J 2Y4 | Canada |
| New Brunswick - Corporate Registry, Service New Brunswick | PO Box 1998 | Fredericton | NB | E3B 5G4 | Canada |
| Alberta Government - Director of Fair Trade | Commerce Place, 10155-102 Street NW, 3rd floor | Edmonton | AB | T5J 4L4 | Canada |
| British Columbia - BC Registry Services | PO Box 9431 - Stn prov Govt. | Victoria | BC | V8W 9V3 | Canada |
| Canada Revenue Agency | Tax Centre, 275 Pope Rd. Suite 103 | Summerside | PEI | C1N 6A2 | Canada |
| Revenue Quebec | 3800, rue de Marly | Quebec | QC | G1X 4A5 | Canada |

| Name | Address | City | Province/State | Postal/Zip Code | Country |
|------|---------|------|----------------|-----------------|---------|
| Alberta Securities Commission | Suite 600, 250–5th St. SW | Calgary | AB | T2P 0R4 | Canada |
| British Columbia Securities Commission | P.O. Box 10142, Pacific Centre, 701 West Georgia Street | Vancouver | BC | V7Y 1L2 | Canada |
| Manitoba Securities Commission | 500 - 400 St. Mary Avenue | Winnipeg | MB | R3C 4K5 | Canada |
| Financial and Consumer Services Commission of New Brunswick / Com | Suite 300, 85 Charlotte Street | Saint John | NB | E2L 2J2 | Canada |
| Superintendent of Securities, Service NL, Government of Newfoundlan | P.O. Box 8700, 2nd Floor, West Block Confederation Building | St. John's | NL | A1B 4J6 | Canada |
| Nova Scotia Securities Commission | Suite 400, 5251 Duke Street | Halifax | NS | B3J 1P3 | Canada |
| Ontario Securities Commission | 22nd Floor, 20 Queen Street West | Toronto | ON | M5H 3S8 | Canada |
| Prince Edward Island - Securities Office Department of Community Affi | PO Box 2000 | Charlottetown | PEI | C1A 7N8 | Canada |
| Autorité des marchés financiers | 800, square Victoria, 22e étage C.P. 246, tour de la Bourse | Montreal | QC | H4Z 1G3 | Canada |
| Financial and Consumer Affairs Authority of Saskatchewan | Suite 601, 1919 Saskatchewan Drive | Regina | SK | S4P 4H2 | Canada |
| City of Wrangell | P.O. Box 531 | Wrangell | AK | 99929 | United States |
| Montgomery County Commission | Tax & Audit Department, P.O. Box 4779 | Montgomery | AL | 36103 | United States |
| Salt River Pima-Maricopa Indian Cmnty | 10005 East Osborn Rd. | Scottsdale | AZ | 85256 | United States |
| Cascade City Clerk | P.O. Box 649 | Cascade | ID | 83611 | United States |
| North Carolina Department of Revenue | P.O. Box 25000 | Raleigh | NC | 27640 | United States |
| CITY OF ABERDEEN | FINANCE DEPARTMENT, 200 E. Market Street | Aberdeen | WA | 98520 | United States |
| City of Bainbridge Island | PO Box 94304 | Bainbridge Island | WA | 98124 | United States |
| City of Burien | 400 SW 152 St, Suite 300 | Burien | WA | 98166 | United States |
| CITY OF HOQUIAM | FINANCE DEPARTMENT, 609 8TH STREET | HOQUIAM | WA | 98550 | United States |
| City of Issaquah | Finance Department, P.O. Box 1307 | Issaquah | WA | 98027 | United States |
| City of Kelso | PO Box 819, 203 South Pacific, Suite 102 | Kelso | WA | 98626 | United States |
| City of Lacey | 420 College Street SE | Lacey | WA | 98503 | United States |
| City of Longview | PO Box 128, 1525 Broadway | Longview | WA | 98632 | United States |
| CITY OF MERCER ISLAND | 9611 SE 36th Street | Mercer Island | WA | 98040 | United States |
| City Treasurer | PO Box 2009 | Olympia | WA | 98507 | United States |
| City of Roy | PO Box 700 | Roy | WA | 98580 | United States |
| City of Shelton | 525 W. Cota St. | Shelton | WA | 98584 | United States |
| The City Treasurer | PO Drawer 9 | South Bend | WA | 98586 | United States |
| CITY OF SNOQUALMIE | PO BOX 987 | SNOQUALMIE | WA | 98065 | United States |
| City of Barboursville | P.O. Box 266 | Barboursville | WA | 25504 | United States |
| City of Charleston | City Collectors Office, P.O. Box 7786 | Charleston | WV | 25356 | United States |
| City of Kenova | P.O. Box 268 | Kenova | WV | 25530 | United States |
| Tax Department | 232 N. Queen Street | Martinsburg | WV | 25402 | United States |
| Finance Department | 389 Spruce Street | Morgantown | WV | 26505 | United States |
| City of Parkersburg | P.O. Box 1627 | Parkersburg | WV | 26102 | United States |
| City of Philippi | P.O. Box 460 | Philippi | WV | 26416 | United States |
| City of Summersville | P.O. Box 525 | Summersville | WV | 26651 | United States |
| Town Recorder | P.O. Box 7 | Wardensville | WV | 26851 | United States |
| Canada Revenue Agency | PO Box 20000, Station A | Sudbury | ON | P3A 5C1 | Canada |
| OSB - CCAA Team | 235 Queen Street | Ottawa | ON | K1A 0H5 | Canada |
| Varde Partners | 520 Madison Ave, 34th Floor | New York | NY | 10022 | United States |
| Castlelake L.P. | 65 East 55th Street 28th Floor | New York | NY | 10022 | United States |
| Bancorp | 409 Silverside Road, Suite 105 | Wilmington | DE | 19809 | United States |
| Wafra Inc | 345 Park Ave | New York | NY | 10154 | United States |
| Canadian Asset-Backed Credit Fund LP | 1133 Yonge Street, Suite 603 | Toronto | ON | M4T 2Y7 | Canada |
| Herscu, Larry | 1 Clarendon Drive | Richmond Hill | ON | L4B 2V1 | Canada |
| Hinolan, Danielle | 2737 Collins Crescent SW | Edmonton | AB | T6W 3X4 | Canada |
| Malenica, John | 5148 Hastings St E | Burnaby | BC | V5B 1P6 | Canada |
| Negi, Ruchi | 135 Gold Park Gate, | Angus | ON | L0M 1B4 | Canada |
| Parker, Rosemary | 31096 Elbow River Drive | Calgary | AB | T3Z 2T8 | Canada |
| Popovich, Nicole | 710-1888 Bayview Avenue | Toronto | ON | M4G 0A7 | Canada |
| Roter, Domenic | 507-900 Glen Street | Oshawa | ON | L1J 5Z5 | Canada |
| Baic, Jennifer | 217-172 Argyle Street North | Caledonia | ON | N3W 2J7 | Canada |
| Hibbert, Angelique | 63 Borrelli Drive | Brampton | ON | L6Y 5X1 | Canada |
| Hoo Sang, Taneca | 139 Adventura Rd | Brampton | ON | L7A 5A7 | Canada |
| Kuin, Stephanie | 145 Hillcrest Avenue SW | Airdrie | AB | T4B 4C8 | Canada |
| Lechniak, Darren | 2188 King Street East | Hamilton | ON | L8K 1W6 | Canada |
| Mifflin, Alexia | 637 Coventry Drive N.E. | Calgary | AB | T3K 4X9 | Canada |
| Opalinski, Ewa | 116 Kenilworth Avenue | Toronto | ON | M4L 3S6 | Canada |
| Sydock, Laura | 125 Larocque Road | North Bay | ON | P1B 8G3 | Canada |
| Xu, Xin | 120 Song Meadoway | Toronto | ON | M2H 2T7 | Canada |
| Kassella, Sherry | 47 Batson Drive | Aurora | ON | M3W 2J7 | Canada |
| Rajchel, Tobias | 78 Rumsey Road Maple | Maple | ON | L6A 4L8 | Canada |
| Lewis, Matthew | 2464 Secreto Drive | Oshawa | ON | L1L 0H6 | Canada |
| Pupulin, Heather | 3257 Stocksbridge Ave. | Oakville | ON | L6M 0E3 | Canada |
| Blumenthal, Myles | 83 Redpath Unit 1705 | Toronto | ON | M4S 0A2 | Canada |
| Hodgeson, David | 40-260 Royalton Common | Oakville | ON | L6H 0N2 | Canada |
| Marr, Ryan | 15 Marlee Ave. | Toronto | ON | M6E 3B1 | Canada |
| Wallbank, Chris | 58 Leuty Ave. | Toronto | ON | M4E 2R4 | Canada |
| Godson, Caroline | 8663 Eramosa Garafraxa Townline | Belwood | ON | N0B 1J0 | Canada |
| Srikaran, Kagesan | 10 Mystical Road | Brampton | ON | L7A 2S4 | Canada |
| Hambly, Amy | 48 Preston St. | Scarborough | ON | M1N 3N1 | Canada |
| Sun, Aiwei (Ivy) | 127 Connaught Ave. | York | ON | M2M 1H1 | Canada |
| Galle, Nicholas | 1479 Rogerswood Court | Mississauga | ON | L5J 1R7 | Canada |
| Bass, Marlon | 361 Howland Ave. | Toronto | ON | M5R 3C1 | Canada |
| Opalinski, Eva | 116 Kenilworth | Toronto | ON | M4L 3S6 | Canada |
| Amy Aubin | 2256 Yates Court | Oakville | ON | L6L 5K6 | Canada |
| Alexander Mitchell | 102 Bessborough Drive | Toronto | ON | M4G 3J1 | Canada |
| Chris Nunes | 62 Bramble Crescent | Stouffville | ON | L4A 7Y5 | Canada |
| William O'Hara | 6 Drummond Street | Etobicoke | ON | M8V 1Y8 | Canada |
| Christopher Torokvei | 55 Scollard Street | Toronto | ON | M5R 0A1 | Canada |
| Knight, Leon | 74 Waverly Road | Toronto | ON | M4L 3T1 | Canada |
| Lucas Atkinson | 4066 Applevalley Lane | Burlington | ON | L7L 1E7 | Canada |
| Michael Lindblad | 31 Dalebrooke Crescent | Whitby | ON | L1P 1P2 | Canada |
| Samuel Solomon | 180 University Ave Unit 1907 | Toronto | ON | M5H 0A2 | Canada |
| Dianna Price | 1 Balmoral Ave. Apt 715 | Toronto | ON | M4V 3B9 | Canada |
| Sonshine, Edward | 68 Yorkville Ave. PH90 | Toronto | ON | M5R 3V7 | Canada |
| Davloor, Raghunath | 375 Rouge Hill Crt. | Pickering | ON | L1V 6L5 | Canada |
| Barbaro, Catherine | 5 Ivor Road | Toronto | ON | M4N 2H3 | Canada |

| Name | Address | City | Province/State | Postal/Zip Code | Country |
|---|---|---|---|---|---|
| Steiner, Fred | 2 Chedington Place Suite 5C | Toronto | ON | M4N 3R5 | Canada |
| Rob Day | | | | | |
| Fields, Jeff | 71 Laight St. | New York | NY | 10013 | United States |
| Daniel Wittlin | | | | | |
| Nicole Abreu | | | | | |
| Lance Albanese | | | | | |
| Tracy Bailey | | | | | |
| Katrina Bearden | | | | | |
| Kyle Beckel | | | | | |
| Michelle Bejarano | | | | | |
| Ashley Bradshaw | | | | | |
| Vickie Briceno | | | | | |
| Ethan Brown | | | | | |
| Samantha Bullock | | | | | |
| Karlee Carlock | | | | | |
| Amarilys Castro DeLozier | | | | | |
| Sarai Chavez | | | | | |
| Micah Clair | | | | | |
| Angela Cochran | | | | | |
| Alexander Cooper | | | | | |
| Baileigh Crum | | | | | |
| Trevor DeForge | | | | | |
| Michael Dietz | | | | | |
| Tammie Dopler | | | | | |
| Shane Dreith | | | | | |
| Aaron Drury | | | | | |
| Aimee Escobedo | | | | | |
| Janell Etzel | | | | | |
| Stephen Everett | | | | | |
| Kenny Fitzgerald | | | | | |
| Aanston Frazier | | | | | |
| Dawna Gabaldon | | | | | |
| Karen Giron | | | | | |
| Tiah Goit | | | | | |
| Amanda Graham | | | | | |
| Kyle Gunn | | | | | |
| Ryan Heidelberg | | | | | |
| Rebecca Henry | | | | | |
| Kyle Hicks | | | | | |
| Karen Johnson | | | | | |
| Laquoia Johnson | | | | | |
| Beverly Kniegge | | | | | |
| Jentry Krehbiel | | | | | |
| Daniel Kropatsch | | | | | |
| Joseph Maddox III | | | | | |
| Rebecca Madsen | | | | | |
| Tiffany Madsen | | | | | |
| Christina Maurer | | | | | |
| Katelyn McCoy | | | | | |
| Tonya Mohr | | | | | |
| Melissa Moore | | | | | |
| Jamie Nanfito | | | | | |
| Chantell Nava | | | | | |
| Melody Owens | | | | | |
| Elaine Phillips | | | | | |
| Paul Phillips | | | | | |
| Brian Plaster | | | | | |
| Jake Porter | | | | | |
| Brian Puron | | | | | |
| Jason Reid | | | | | |
| Blanca Rivas-Retana | | | | | |
| Stephanie Rohner | | | | | |
| Felicia Saenz | | | | | |
| Sherri Sarconi | | | | | |
| Jennifer Schmidt | | | | | |
| Brian Schonfeld | | | | | |
| Cherise Schuster | | | | | |
| Shauna Scofield | | | | | |
| Samantha Skraback | | | | | |
| Gary Souverein | | | | | |
| Krystal Stanford | | | | | |
| Heather Sterling | | | | | |
| Emery Swaim | | | | | |
| Vincent Veltre | | | | | |
| David Webster | | | | | |
| Braiden Wells | | | | | |
| Tonia Wooden | | | | | |
| Wayne Woolley | | | | | |
| David Zahner | | | | | |
| Tammy Ziegler | | | | | |
| All other current employees of the Debtors | | | | | |
| All former employees of the Debtors since 2023 | | | | | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:* | Chapter 15 |
| CHESSWOOD GROUP LIMITED, *et al.*,[1] | Case No.  24- (____) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## CORPORATE OWNERSHIP STATEMENT PURSUANT TO
## FEDERAL RULES OF BANKRUPTCY PROCEDURE 1007(a)(4)(A) AND 7007.1

FTI Consulting Canada Inc. is the court-appointed monitor and duly authorized foreign representative (the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code of the above-captioned debtors (the "Debtors"), which  are the subject of jointly-administered proceedings under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 in the Ontario Superior Court of Justice, in Toronto, Ontario, Canada.

The Monitor hereby files this Corporate Ownership Statement pursuant to rules 1007(a)(4)(A) and 7007.1 of the Federal Rules of Bankruptcy Procedure, and states that the following entities own 10% or more of any class of the equity interests of any of the Chesswood Debtors, as set forth below:

| Entity | Equity Ownership |
|---|---|
| Chesswood Group Limited ("Chesswood Limited") | Daniel Wittlin (16.42%)<br>Ed Sonshine (10.05%) |
| Chesswood Holdings Ltd. ("Chesswood Holdings") | Chesswood Limited (100%) |

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses:  Chesswood Group Limited (6730), Chesswood Holdings Ltd. (8445), Lease-Win Limited (2081), Case Funding Inc. (8049), 1000390232 Ontario Inc. (0232), Chesswood Capital Management Inc. (4785), Chesswood Capital Management USA Inc. (3582), Chesswood U.S. Acquisitionco Ltd. (4029), Pawnee Leasing Corporation (4533), Tandem Finance Inc. (1260), Windset Capital Corporation (4857), Rifco Inc. (7815), and Rifco National Auto Finance Corporation (1311).  The Debtors' executive headquarters is located at Chesswood Group Limited, 41 Scarsdale Road, Suite 5, Toronto, ON, M3B 2R2.

| 1000390232 Ontario Inc. | Chesswood Limited (100%) |
| Rifco Inc. | Chesswood Limited (100%) |
| Chesswood U.S. Acquisition Co Ltd. ("Chesswood Acquisition") | Chesswood Holdings (100%) |
| Case Funding Inc. | Chesswood Holdings (100%) |
| Lease-Win Limited | Chesswood Holdings (100%) |
| Chesswood Capital Management Inc. ("Chesswood Management") | Chesswood Holdings (100%) |
| Chesswood Capital Management USA Inc. | Chesswood Management (100%) |
| Pawnee Leasing Corporation | Chesswood Acquisition (100%) |
| Tandem Finance Inc. | Chesswood Acquisition (100%) |
| Windset Capital Corporation | Chesswood Acquisition (100%) |
| Rifco National Auto Finance Corporation | Rifco Inc. (100%) |

Dated: October 30, 2024
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Kenneth J. Enos*

Kenneth J. Enos (No. 4544)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253
      kenos@ycst.com

-and-

ALSTON & BIRD LLP
Stephen M. Blank (pro hac vice admission pending)
William Hao (pro hac vice admission pending)
Dylan Cassidy (pro hac admission pending)
90 Park Avenue
New York, New York 10016
Tel: (212) 210-9400
Fax: (212) 210-9444
Email: stephen.blank@alston.com
      William.hao@alston.com
      Dylan.cassidy@alston.com

*Counsel for the Petitioner*

26917563.7

**Fill in this information to identify the case:**

Debtor name    Chesswood Capital Management Inc.

United States Bankruptcy Court for the:    DISTRICT OF DELAWARE

Case number (if known)    _____

☐ Check if this is an amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.   Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.   Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.   18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐   *Schedule H: Codebtors* (Official Form 206H)
☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule*
☐   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☒   Other document that requires a declaration    **1007(a)(4) Statement and Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   __10/30/2024__    X **Jeffrey Rosenberg**
                                        Signature of individual signing on behalf of debtor

                                       **Jeffrey Rosenberg**
                                       Printed name

                                       **Foreign Representative**
                                       Position or relationship to debtor